EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
vs.
PARKISON ET AL.

## HANDY, UNDER-TUTOR, &c. vs. PARKISON ET AL.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE OF THE EIGHTH PRESIDING.

The father and mother have, *during marriage*, the enjoyment of the estate of their children, until majority or emancipation; and the usufruct, which the father has on the estates of his children, is only *during marriage*, and is a legal usufruct.

According to the laws of Spain, the father is entitled, during minority, to the usufruct of the adventitious property of his children, and is not bound to account for the fruits and revenues. He can never be the tutor of his own child, as it is only on his death tutorship begins. He may, by testament, appoint a tutor, even to the exclusion of the mother.

According to the Louisiana Code, the surviving husband cannot be a usufructuary of the estate of his children. Tutorship commences on the dissolution of the marriage, by the death of either party, and the survivor is entitled to the tutorship as natural tutor. The obligations of tutor, in relation to the property of the children, are prescribed by law.

The Spanish law was abrogated in Louisiana, by the 25th section of the act of 1828.

This suit commenced by injunction. The plaintiff, Samuel Handy, in his capacity of under-tutor to three of the minors, heirs and children of Pamelia Flower, deceased wife of Henry Flower, alleges, that said heirs, together with four others, inherited from their deceased mother, a plantation and slaves, near Bayou Sarah, which she owned in her lifetime as her seperate property.

The plaintiff further states, that John Parkison, sheriff of West Feliciana, in virtue of two executions, which issued on judgments obtained by the Bank of Louisiana and N. Cox, against Henry Flower, the father of said minors, has levied on all the undivided interest of said minors, in the present crop of cotton, and is about to sell it, on the pretense that Henry Flower, the father, has a usufructuary interest in the property of said minors, his children. He prays for an injunction to stay the sale, and that it be adjudged and decreed that this property is in no way liable for the debts of the father, and for general relief.

EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
vs.
PARKISON ET AL.

The separate answer of N. Cox, one of the creditors, enjoined, admits the plantation and slaves in question were the separate property of Pamelia Flower, deceased; that it has descended to the three heirs, who are now plaintiffs, and held by them in common; but that it is possessed and carried on by their father and natural tutor, Henry Flower, who has a legal right to the revenues and profits arising therefrom, in consideration of educating and supporting said minor children. He expressly avers, that the whole of the cotton crop belongs to the said Henry Flower, as revenue and usufruct, and is subject to seizure and payment of his debts.

He prays that the injunction be dissolved, with damages, and that the said property be declared liable to the debts and executions, under which it is seized.

Upon these pleadings and issues, the cause was tried. The plaintiffs showed, as was conceded, that the plantation and slaves, upon which the cotton crop, consisting of one hundred and forty bales, under seizure, was raised, belonged to them in their own right, and that they were under the tutelage of their father, Henry Flower. The district judge was of opinion, the revenues and profits of the plantation and slaves, was entrusted to the control and management of the father and natural tutor, for the education and maintenance of the minors, according to their situation in society during minority, and in no way subject to his debts. Judgment was therefore rendered in favor of the plaintiffs, perpetuating the injunction, &c., from which the defendants appealed.

EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
vs.
PARKISON ET AL.

*Flower*, for the plaintiffs.

The judgment of the District Court is correct and ought to be confirmed, so far as relates to the want of right to levy on the proceeds of the property of minors as belonging to the father, as usufructuary after dissolution of marriage :

1. Because the usufruct sought to be established, is the legal usufruct to which the father is entitled on the estate of his minor children, but which can exist only during marriage. *Louisiana Code, articles* 239 and 532.

2. Because this usufruct does not exist after dissolution of marriage, for the law directs, Louisiana Code, article 241, to whom the usufruct shall belong in case of a mere separation from bed and board, and when both mother and father are aliens ; but in case of the death of either mother or father, usufruct ceases to exist, and neither the surviving mother nor father is entitled to the usufruct of the property of their minor children, for immediately the law of tutorship governs ; and the Code directs, article 268, that " after the dissolution of marriage by the death of either husband or wife, the *tutorship* of the minor children belongs of right to the surviving mother or father," who then becomes natural tutor and is bound to perform all the obligations required of tutors, except that he is not compelled to give security. *Louisiana Code, article* 269.

3. Because there is no law which frees the father as natural tutor from the obligation of performing the duties required by articles 341 and 343 of the Civil Code, which requires him to invest the surplus revenue of his minor child, and to provide for his support and education from the revenue of the minor if sufficient, otherwise by the advice of a family meeting, to take from the capital to supply his wants ; from which provisions of law, the iniquity of this seizure is at once apparent : for, how could a father perform these duties ? or, what would be the fate of a minor whose revenue is taken to pay the debts of his tutor, and having nothing to support or educate him ? His capital must soon follow.

4. Because the Civil Code, in directing the manner in which usufruct expires, relates at article 606 the conditions of the only case in which it can exist after dissolution of

EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
vs.
PARKISON ET AL.

marriage, which is when usufruct is left to a surviving wife, until her dowry be refunded ; and as nothing of the kind can exist in this case, the marriage having been dissolved, the right of usufruct has ceased.

5. Damages should be allowed in this suit, because the law directs that " every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." *Louisiana Code, articles* 2294–96. And this is certainly a case in which the minors, represented by their under-tutor, have sustained damages ; for, the proceeds of their property having been illegally seized, they have been forced into the trouble and expense attending the prosecution of this suit; and the defendants, not contented with the judgment of the District Court, which is founded on plain law and justice, except as regards damages, where it was in their favor, but with which the appellee would have rested satisfied, have forced them into the additional expense of defending this appeal.

6. Should the father be considered as usufructuary after dissolution of marriage, the usufruct is not liable to seizure, as it is the usufruct of the property of the minor children. *Louisiana Code, article* 1987.

*Lobdell,* for the defendants, contended, that the seizure in this case should have been sustained, and the injunction dissolved. The property is clearly a usufruct, belonging to Henry Flower, the father of the minors, and in the enjoyment of their estate. *Louisiana Code, articles* 26, 39, 41, 124, 153, 154, 234.

2. Fathers and mothers shall have, during marriage, the enjoyment of the estate of their children, until their majority or emancipation. The usufruct, in case of separation from bed and board, shall take place in *toto*, &c. *Louisiana Code, articles* 239, 240—5, *and* 253.

3. After the dissolution of the marriage, tutorship begins, and belongs of right to the survivor, as natural tutor. No security is to be given ; but in relation to creditors, according

EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
vs.
PARKISON ET AL.

to article 1037, they must give security. *Louisiana Code, articles* 268, 269, 271, 321, 326, 330, 343, 344.

4. The father is, during marriage, administrator of the estate of his children, and is accountable for the property and revenues of the estates, the use of which he is not entitled to by law ; and for the *property* only of the estates, the usufruct of which the law gives him. The administration ceases at the term of majority or emancipation of the children. *Louisiana Code, article* 267.

5. Usufruct is the right of enjoying a thing, the property of which is in another, and take its revenues and profits. *Louisiana Code, articles* 525 to 529.

6. The usufruct which the father has in the estate of his children during marriage, is a legal usufruct, and all the revenues, fruits and profits of every kind, (except increase of slaves,) belong to the usufructuary. *Louisiana Code,* 532, 536 to 549, *and* 553.

7. If all the property of the wife be paraphernal, and she reserves the administration of it, she ought to bear a proportion of the marriage charges, equal to half her income, if needed. *Louisiana Code, articles* 2366, 2372, 2378, 2397, 2409.

8. By the laws of Spain, the father was charged with providing for supporting and educating his children. This power over the children, was for the benefit of the father. See *Civil Law of Spain,* translated by Johnston, *pages* 4 *and* 7, *notes* 11–14, and 1 to *page* 7 ; and also, *page* 52.

9. If the wife leaves children, the husband remains in the enjoyment of the usufruct of the *dot. Civil Law of Spain,* Johnston's translation, *page* 60, *note* 22. 1 *Partida,* (Moreau & Carleton) *page* 541, *law* 31.

10. The father has great power over the persons and property of his children. See *Civil Law of Spain, pages* 74–5, *notes* 7—13. 1 *Partida,* (Moreau & Carleton) *page* 564.

11. The Spanish laws referred to, clearly support the claims of the defendants to the property under seizure, as the usufruct of their debtor, and this law should govern in this case. The Civil Code of 1808 only repealed so much of the

former laws as were contrary to, or incompatible with it. 5 *Martin*, 94. 1 *Ibid.*, *N. S.*, 90.

EASTERN DIST.
June, 1836.

HANDY, UNDER-
TUTOR, ETC.
*vs.*
PARKISON ET AL.

*Bullard, J.*, delivered the opinion of the court.

The appellants having recovered judgments against Henry Flower, caused executions to be levied on a lot of cotton in bales, which had been raised on a plantation belonging to his minor-children, which they inherited from their deceased mother, and is administered by their father and natural tutor. The under-tutor of the minors obtained an injunction to prevent the sale of the cotton thus seized, alleging that it belongs to them, being the produce of their land and of the labor of their slaves. The defendants justified the seizure, by alleging that the cotton is the property of the father, as usufructuary of their land and slaves. The question thus presented is, whether, according to the existing law, the surviving father is entitled during the minority of his children to the usufruct of the property belonging to them by inheritance from their deceased mother. The seizing creditors, whose pretensions depend on sustaining the affirmative of this proposition, having failed below, have appealed to this court.

They rely mainly on article 239, taken in connection with article 532 of the Louisiana Code, and upon the Spanish law. The first of these articles declares, that "fathers and mothers shall have *during marriage* the enjoyment of the estate of their children, until their majority or emancipation." The latter declares, that " the usufruct to which the father is entitled on the estate of his children *during the marriage*, is a legal usufruct." We are acquainted with no rule of construction of statutes which would authorize us to reject as surplusage such important words of limitation as " *during marriage*," in both these articles; on the contrary, we are bound to give effect, if possible, to every word. By the first article, the usufruct of the father and mother is dependent on two conditions : the minority of the children, and the continuance of the marriage. By another provision of the Code, this usufruct accrues to the benefit of the party at whose

The father and mother have, *during marriage*, the enjoyment of the estate of their children, until majority or emancipation ; and the usufruct, which the father has on the estates of his children, is only *during marriage*, and is a legal usufruct.

13

EASTERN DIST. suit a separation has been pronounced. If the father be
June, 1836. entitled to enjoy the property of his children as usufructuary,
HANDY, UNDER- after the dissolution of the marriage, it appears to us clear he
TUTOR, ETC. must derive that right from some other part of the law, and
PARKISON ET AL. that the articles in question, being perfectly clear and free of
ambiguity, are not susceptible of such a construction as to
confer it.

But, it is contended, that these provisions of the existing
Code are not inconsistent with the existence of such a right,
and that the Spanish law, which recognized this usufruct as
belonging to the father during the minority of his children,
is still in force.

We do not doubt that by the law of Spain, the father is
entitled during minority to the usufruct of the *adventitious*
property of his children. He was not bound to account for
the fruits and revenues ; but there is an obvious and striking
difference between the Spanish law and that of Louisiana as
relates to tutorship. In Spain, the father can never be the
tutor of his own child ; it is only on his death that tutorship
begins, and he may by testament appoint a tutor, to the
exclusion of the mother: as the *pater familias* he enjoys during
the minority of his children the usufruct of their property,
under certain restrictions. By our Code, on the contrary,
the tutorship commences on the dissolution of the marriage
by the death of either party, and the survivor is entitled to
the tutorship as natural tutor. The surviving father becomes
tutor, and his obligations as such in relation to the property
of the pupil, are pointed out by the Code. He is not bound,
it is true, to give security for his faithful administration, but
in other respects we find no difference between the obliga-
tion of the natural and the dative tutor. They are equally
bound by law to account for the revenues of the property of
the pupil, subject to the expenses of their education according
to their means and condition in life. These obligations and
responsibilities are wholly inconsistent with the rights of
usufructuaries.

But even supposing that this part of the Spanish law was
not tacitly abrogated by the Code of 1808, or by that of 1825,

*According to the laws of Spain, the father is entitled, during minority, to the usufruct of the adventitious property of his children, and is not bound to account for the fruits and revenues. He can never be tutor of his own child, as it is only on his death that tutorship begins. He may, by testament, appoint a tutor, even to the exclusion of the mother.*

*According to the Louisiana Code, the surviving husband cannot be a usufructuary of the estate of his children. Tutorship commences on the dissolution of the marriage, by the death of either party, and the survivor is entitled to the tutorship as natural tutor. The obligations of tutor, in relation to the property of children, are prescribed by law.*

yet by the 25th section of the act of 1828, it is enacted, that <span>EASTERN DIST.</span>
" all the civil laws which were in force before the promulga- <span>June, 1836.</span>
tion of the Civil Code, lately promulgated, be and are hereby <span>STATE</span>
abrogated, except so much of title tenth of the Civil Code, <span>vs.</span>
as is embraced in its third chapter, which treats of the disso- <span>DUNBAR ET AL.</span>
lution of communities or corporations." This court has <span>The Spanish law was abrogated in Louisiana,</span>
always considered this section of the act of 1828, as express- <span>by the 25th section of the act of</span>
ly repealing the whole body of the Spanish law, which <span>1828.</span>
remained in force after the promulgation of the Code of 1808.
The Civil Code itself was repealed, except so far as relates
to the chapter above mentioned.

This view of the merits of this controversy, renders it
unnecessary for us to examine some minor questions, relating
to the proceedings in the court of the first instance.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.